UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| LOGAN FILECCIA | CIVIL ACTION NO. 15-2333 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CADDO PARISH SCHOOL BOARD, ET AL. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by Defendants Caddo Parish School Board ("CPSB"), Colonel Eric Sweeney, and Sergeant Adron Hester. Record Document 21. Plaintiff's complaint brings claims for invasion of privacy, defamation, violation of the federal Rehabilitation Act, the Louisiana Employment Discrimination Law, violation of Fourteenth Amendment due process and state law procedural due process, malicious prosecution and breach of contract, all arising out of CPSB's termination of Plaintiff's employment. Record Documents 1-2, 12.

For the reasons discussed below, Defendants' motion for summary judgment [Record Document 21] is **GRANTED**. Plaintiff's claims are dismissed with prejudice as nonjusticiable under the Feres doctrine.

## I. Background

The parties agree on the following facts. Plaintiff Logan Fileccia is a retired Army Major. Record Document 1-2, p. 1. He was hired by the CPSB to be an instructor in the Junior Reserve Officers' Training Corps ("JROTC") program at Fair Park High School in Caddo Parish, beginning in the fall of 2014. Id., p. 2. Col. Sweeney is the Director of

Army Instruction for the JROTC units at CPSB and was Plaintiff's supervisor. Record Document 1, p. 4. Sgt. Hester is a JROTC instructor at Fair Park High School. Record Document 12, p. 2. The Secretary of the Army is required to establish and maintain a JROTC unit at any qualified school that requests one, and oversees all JROTC programs nationwide. 10 U.S.C. § 2031. A JROTC instructor must be either active duty military or retired military who meet certain requirements and have qualifications approved by the Secretary. Id., § 2031(d). The Secretary, through the United States Army Cadet Command ("Cadet Command"), issues a certification to retired military personnel who meet the necessary requirements. Only certified personnel may be employed as JROTC instructors. Instructors are employed by the school district, not by the Army. Plaintiff is retired from the Army and was certified by the Secretary to act as a JROTC instructor. Record Document 1-2, p. 1. Plaintiff worked as the JROTC instructor from September 2014 to March 2015, when Cadet Command decertified Plaintiff as a JROTC instructor. Record Document 21-1, p. 4. Because CPSB is required to employ only certified JROTC instructors, Plaintiff was terminated. Id.

The parties differ over the reason for the decertification and resulting termination. Plaintiff contends that there were serious irregularities in the administration of the JROTC program at Fair Park High School, which he tried to bring to the attention of his superior, Col. Sweeney, who had previously been the JROTC instructor at Fair Park High School. Record Document 1-2, p. 2. In an effort to discredit Plaintiff, Col. Sweeney and Sgt. Hester allegedly made false reports to school

administration that Plaintiff had threatened to burn down the school and was a threat to students. Id., p. 3. Defendants Hester and Sweeney allegedly also made false reports to Cadet Command that Plaintiff was mentally unstable, which led to Plaintiff's decertification and termination. Id., p. 4.

Defendants contend that there were incidents at the school that showed that Plaintiff was not properly supervising students. Record Document 21-1, pp. 2-3. Defendants further contend that Plaintiff volunteered that he suffered from combat-related PTSD and that he was seeking ongoing treatment as a result. Id. Col. Sweeney and Sgt. Hester, concerned about Plaintiff's fitness to serve as a JROTC instructor, took the issue up the chain of command to the JROTC Chief in the U.S. Department of Army, and ultimately filed a "decertification review packet." Id., p. 4. Thereafter, Plaintiff was decertified by Cadet Command.

Following his termination, Plaintiff brought suit in state court, alleging state law tort claims for invasion of privacy, because Col. Sweeney allegedly improperly allowed Sgt. Hester to see Plaintiff's personnel records, including his medical records, and for defamation, because Col. Sweeney and Sgt. Hester falsely reported to Cadet Command that Plaintiff suffered from a serious psychiatric condition and was a threat to students. Record Document 1-2. After this action was removed, Plaintiff filed an amended complaint alleging several additional claims. Record Document 12. Plaintiff claims CPSB terminated him on the basis of disability in violation of the federal Rehabilitation Act of 1973 (42 U.S.C. § 12102) and the Louisiana Employment Discrimination Law (La. R.S.

23:323). Plaintiff brings a claim under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment due process rights, and a parallel claim for violation of state constitutional due process, for deprivation of his property interest in his employment. Plaintiff also alleges Louisiana law claims for malicious prosecution against Col. Sweeney, for instituting the decertification procedure, and breach of contract against CPSB. All of these claims arise out of the events leading up to Plaintiff's decertification as a JROTC instructor and consequent termination by CPSB. Plaintiff seeks reinstatement, back pay and benefits, and compensatory damages for economic injury and injury to his professional reputation.

## II. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

party's case; rather, it need only point out the absence of supporting evidence. See id. at 322-323.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. Little, 37 F.3d at 1075.

B. Feres Doctrine

The Feres doctrine, sometimes referred to as the intramilitary immunity doctrine, prohibits military personnel from bringing actions in federal court for injuries suffered

"incident to their service in the armed forces." Walch v. Adjutant General's Dep't of Texas, 533 F.3d 289, 294 (5th Cir. 2008). The doctrine is "premised on the disruptive nature of judicial second-guessing of military decisions." Id. at 296. Allowing a plaintiff to bring a claim against military personnel would inappropriately "require military commanders to justify their actions in civilian courts." Id. at 297.

Feres itself considered a claim brought under the Federal Tort Claims Act, but its rationale has since been extended to other types of claims. 340 U.S. 135 (1950). In the Fifth Circuit, the Feres doctrine has been applied to prohibit Bivens claims, Section 1983 claims, and Title VII claims. Walch, 533 F.3d at 294. "The Feres doctrine also applies to state law claims because judicial review of a claim for damages asserted on the basis of state law would constitute no less an unwarranted intrusion into the military personnel structure than the entertainment of federal claims." Davidson v. United States, 647 Fed. App'x 289 (5th Cir. 2016). "It is the military environment, not the nature of the claim, that is controlling." Filer v. Donley, 690 F.3d 643, 649 (5th Cir. 2012).

The Supreme Court has said that an injury occurs "incident to military service" when it occurs because of a plaintiff's "military relationship with the Government." United States v. Johnson, 481 U.S. 681, 689 (1987). The Fifth Circuit applies a three-part test to determine whether a claim is "incident to military service": "(1) duty status, (2) site of injury, and (3) activity being performed." Walch, 533 F.3d at 297. This test is "broadly construed to immunize...members of the military from any suit that might intrude upon military affairs, second-guess military decisions, or impair military

Page 6 of 10

discipline." Davidson, 647 Fed. App'x at 291.

Plaintiff argues, without citation, that the Feres doctrine does not apply in this case because neither he nor the individual defendants are active duty military personnel. Record Document 31, p. 42. Indeed, Plaintiff, Col. Sweeney, and Sgt. Hester are all retired Army personnel and were not active duty at the time these events took place. Record Document 1-2, p. 1. In a series of cases considering a dual civilian-military role in the National Guard, the Fifth Circuit has consistently held that judicial review of employment-related claims is inappropriate even when the role is not active duty military but "is sufficiently intertwined with the military that litigation would cause the same improper intrusion" with which the Feres doctrine is concerned. Walch, 533 F.3d at 297. In Walch, the plaintiff was employed as a National Guard technician. Id. at 291. The technician position is a civilian position, but requires as a condition precedent that the technician be a member of a state National Guard. Id. at 295. The plaintiff alleged that he was discriminated against in his civilian work. Id. The Fifth Circuit noted that the Feres doctrine "was premised on the disruptive nature of judicial second-guessing of military decisions" and that "[a]pplying these concerns to National Guard technicians, we find that the military character of their service is extensive." Id. The court concluded that the Title VII claims brought by the Plaintiff were barred. Id. at 291.

In a similar case, the Fifth Circuit affirmed the dismissal of employment-related claims brought by a civilian Air Reserve Technician because he sought impermissible

"review of actions taken by the military that form the basis of his military discharge." Brown v. United States, 227 F.3d 295, 299 (5th Cir. 2000). The Court noted that "[w]hile these actions had a civilian component, in that his discharge made him ineligible for his civilian position, they nonetheless were actions taken within the military sphere." Id.

In a case nearly identical to Plaintiff's, the Eleventh Circuit held that ROTC instructors who are retired military are barred by the Feres doctrine from bringing claims related to their ROTC employment. Norris v. Lehman, 845 F.2d 283, 284 (11th Cir. 1988). In that case, a Navy ROTC instructor's certification was revoked, and he brought a Bivens claim against his supervisor. Id. The plaintiff argued that he was no longer on active duty when his certification was revoked, but the Court still applied the Feres doctrine, noting that the "relationship between [the plaintiff] and [his superior, who revoked his certification], in its very essence, was a military supervisory relationship. It is undisputed that the Navy retained the authority to administer the [ROTC] program and to supervise [the plaintiff]." Id. at 287. See also Lovely v. United States, 570 F.3d 778 (6th Cir. 2009) (holding that Feres doctrine barred intentional infliction of emotional distress claim by student ROTC member against United States); Bowen v. Oistead, 125 F.3d 800, 804 (9th Cir. 1997) (holding that the fact that a plaintiff is not on active duty with the military does not free him from the Feres doctrine); Wake v. United States, 89 F.3d 53 (2d Cir. 1996) (holding that the Feres doctrine barred claims by a student ROTC member against the United States and

various military personnel).

Returning to the Fifth Circuit's three-part test, Plaintiff was not active duty at the time of his employment with CPSB, and he was not terminated on a military base or other military property. The Supreme Court has recognized that the location of the injury "is not nearly as important as whether the suit requires the civilian court to second-guess military decisions." United States v. Shearer, 473 U.S. 52, 57 (1985). The activity Plaintiff performed, JROTC instructor, was inextricably intertwined with the military hierarchy. All JROTC instructors must, as a matter of law, be active or retired military. 10 U.S.C. § 2031. Retired military instructors must meet requirements and qualifications set out by the Secretary of the Army, and must be certified by Cadet Command. In this case, just as in Norris, it is undisputed that the Army retained the authority to supervise the JROTC program and to determine who was qualified to participate as an instructor. Id.

Plaintiff himself repeatedly argues that Col. Sweeney and Sgt. Hester did not comply with Army Cadet Command regulations in the decertification procedure. Record Document 31, p. 3 ("Col. Sweeney purposely avoided informing me of his intent to decertify me, which was a direct violation of [Cadet Command regulation] 145-2."). Much of Plaintiff's argument is dedicated to showing that Col. Sweeney and Sgt. Hester "improperly process[ed]" their allegations about Plaintiff's conduct "through the entire chain of command in the CPSB as well as the JROTC chain of command." Record Document 41. Plaintiff himself agrees that his decertification is the result of review by

the entire JROTC chain of command. Ultimately, it was the Department of the Army that decertified Plaintiff. His subsequent termination by CPSB followed as a matter of course. In order to determine whether such a termination was lawful, the Court would have to inquire into the actions taken at every step of the decertification review process: who submitted what and when to whom and with what documentation, and whether the review was conducted according to Cadet Command regulations at every step through the entire chain of command from Col. Sweeney to the JROTC Chief. Any attempt by this Court to resolve Plaintiff's claims would necessarily require the Court to second-guess the personnel decisions of the Cadet Command and the United States Army. This is exactly the sort of second-guessing and judicial interference with the military sphere that Feres seeks to avoid. The Court is prohibited from such interference, and may not resolve Plaintiff's claims.

## III. Conclusion

For the reasons discussed above, Defendants' motion for summary judgment [Record Document 21] is **GRANTED**. Plaintiff's claims are dismissed with prejudice as nonjusticiable under the Feres doctrine.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 24th day of April, 2017.

Elizabeth Erny Foote
United States District Judge